UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- X

ALEXIS LUCENTE, on behalf of herself and all others    :
similarly situated, and ALVIN SUMIGCAY, individually,   :   Case No. 23 Civ. 3560 (SIL)
   :
                             Plaintiffs,    :
   :
                 -against-    :
   :
EAD ENTERTAINMENT, LLC,    :
   :
                     Defendant.    :

------------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT

KESSLER MATURA P.C.             STEVENSON MARINO L.L.P.
Troy L. Kessler                  Justin R. Marino
Garrett Kaske                   Jeffrey R. Maguire
Benjamin A. Goldstein        445 Hamilton Ave., Ste. 1500
534 Broadhollow Rd., Ste 275     White Plains, NY 10601
Melville, NY 11747            Phone: (212)-939-7227
Phone: (631) 499-9100       jmarino@stevensonmarino.com
Fax: (631) 499-9120         jmaguire@stevensonmarino.com
tkessler@kesslermatura.com
gkaske@kesslermatura.com
bgoldstein@kesslermatura.com

*Attorneys for Plaintiffs and the Proposed FLSA Collective and the New York Class*

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................ iv

Glossary ............................................................................................................................... ix

Introduction ........................................................................................................................... 1

I.      Factual and Procedural Background ......................................................................... 1

    A.  The Parties and Claims ...................................................................................... 1

    B.  Overview of Litigation ...................................................................................... 2

    C.  Settlement Negotiations .................................................................................... 2

II.     Summary of the Settlement Terms ........................................................................... 3

    A.  The Settlement Fund

    B.  Class Members ................................................................................................... 3

    C.  Releases .............................................................................................................. 3

    D.  Allocation Formula ............................................................................................ 3

    E.  Attorneys' Fees and Costs ................................................................................. 4

    F.  Service Payment ................................................................................................. 4

III.    Distribution of Notice .............................................................................................. 4

Argument ............................................................................................................................... 5

I.      This Motion Seeks the Final Approval of the Settlement ........................................ 5

II.     Final Approval of the Settlement is Warranted. ...................................................... 6

    A.  The Settlement Is Procedurally Fair (Rule 23(e)(2)(A)-(B)) .......................... 6

    B.  The Settlement Allocation and Distribution Plan Satisfy the Rule 23 Factors ............ 6

        1.  Distribution of the Notice and Settlement Checks by Mail Was Reasonably Calculated to Reach the Class Members (Rule 23(e)(2)(C)(ii)) and the Notice is Well Crafted and Informative (Rule 23(c)(2)(B)). ................................................. 6

2. The Attorneys' Fees Sought Are Reasonable and There Are no Agreements Between the Parties Other than the Agreement (Rule 23(e)(2)(C)(iii)-(iv)). ..........8

3. The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D))...................................................................................................9

C. The Settlement Is Substantively Fair. ...........................................................9

1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1 & Rule 23(e)(2)(C)(i)). .............................................................................9

2. The Court Cannot Assess the Reaction of the Class Until After Notice Issues (*Grinnell* Factor 2). ...............................................................................10

3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3). ..........................................................10

4. Continuing to Litigate is Risky (*Grinnell* Factors 4 and 5) ...................11

5. Establishing and Maintaining the Class Through Trial Presents Risk (*Grinnell* Factor 6).................................................................................................11

6. Defendant's Ability to Withstand a Greater Judgment Weighs in Favor of Approval (*Grinnell* Factor 7). ..............................................................................12

7. The Settlement Fund Is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9). ........................12

D. The Settlement Meets the FLSA Approval Standard. ..................................13

1. The Settlement of the FLSA Collective Claim is Lower than Rule 23. ...............13

2. The Settlement Avoids the Greatest Hits of Impermissible Terms. .....................14

III. Conditional Certification of the Settlement Class Is Appropriate. ....................................15

A. The Class Should Continue to be Certified for Settlement Purposes ..........................15

B. The Collective Should be Certified for Settlement Purposes ......................................15

IV. XPand's Legal's Fee Should be Approved .......................................................................16

V. The Service Payments are Reasonable and Should be Approved......................................16

VI. Plaintiffs' Counsel's Attorneys' Fees and Costs are Reasonable and Appropriate ..........18

A.  The Requested Attorneys' Fee of One Third is Consistent with Local Norms ...........18

B.  The Lodestar Cross-Check Demonstrates that the Fee is Reasonable ........................18

C.  The Requested Fee's Reasonableness is Further Highlighted by Alternative Methods of Calculating Plaintiffs' Counsel's Lodestar ............................................................21

Conclusion .........................................................................................................................21

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Almond v. PJ Far Rockaway, Inc.*,
  2018 WL 922184 (E.D.N.Y. Feb. 15, 2018) ............................................................... 20

*Ballinger v. Adv. Mag. Publishers, Inc.*,
  2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014) ............................................................ 13

*Barsa v. Beacon Health Options, Inc.*,
  2020 WL 7240346 ...................................................................................................... 17

*Baudin v. Resource Mktg. Corp., LLC*,
  2020 WL 4732083 (N.D.N.Y. Aug. 13, 2020) ........................................................ 6, 7

*Benoskie v. Kerry Foods, Inc.*,
  2020 WL 5769488 (E.D. Wis. Sept. 28, 2020) ......................................................... 14

*Bondi v. DeFalco*,
  2020 WL 2476006 (S.D.N.Y. May 13, 2020) ........................................................... 17

*Briggs v. PNC Financial Servs. Grp.*,
  2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) ............................................................ 14

*Bryant v. Potbelly Sandwich Works, LLC*,
  2020 WL 563804 (S.D.N.Y. Feb. 4, 2020) ............................................................... 11

*Buchanan v. Pay-O-Matic Check Cashing Corp.*,
  2021 WL 3008480 (E.D.N.Y. June 15, 2021) ........................................................... 16

*Burns v. FalconStor Software, Inc.*,
  2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ........................................................... 9

*Cano v. Nineteen Twenty Four Inc.*,
  2017 WL 11507654 (E.D.N.Y. Apr. 24, 2017) ......................................................... 13

*In re Canon U.S.A. Data Breach Litig.*,
  2024 WL 3650611 (E.D.N.Y. Aug. 5, 2024) ............................................................ 19

*Chavarria v. New York Airport Serv., LLC*,
  875 F. Supp. 2d 164 (E.D.N.Y. 2012) ...................................................................... 12

*Chime v. Peak Sec. Plus, Inc.*,
  137 F. Supp. 3d 183 (E.D.N.Y. 2015) ......................................................................... 8

*Chodkowski v. Cnty. of Nassau*,
   2021 WL 3774187 (E.D.N.Y. Aug. 25, 2021) ........................................................ 21

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ........................................................................... 6

*Cohan v. Columbia Sussex Mgmt., LLC*,
   2018 WL 4861391 (E.D.N.Y. Sept. 28, 2018) .............................................. 16, 18, 19

*Cruz v. Sal-Mark Rest. Corp.*,
   2019 WL 355334 (N.D.N.Y. Jan. 28, 2019) ......................................................... 10

*Cymbalista v. JPMorgan Chase Bank, N.A.*,
   2021 WL 7906584 (E.D.N.Y. May 25, 2021) ......................................................... 9

*Delijanin v. Wolfgang's Steakhouse Inc.*,
   2021 WL 535635 (S.D.N.Y. Feb. 12, 2021) ..................................................... 16, 18

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) ............................................................... 17

*Ferrara v. CMR Contracting LLC*,
   848 F.Supp.2d 304 (E.D.N.Y. 2012) ................................................................. 20

*Fisher v. SD Prot. Inc.*,
   948 F.3d 593 (2d Cir. 2020) ......................................................................... 19

*Flores v. CGI Inc.*,
   2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ..................................................... 6, 10

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
   104 F. Supp. 3d 290 (E.D.N.Y. 2015) ............................................................ 13, 14

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) .............................................................. 13, 16, 17

*Guallpa v. N.Y. Pro Signs Inc.*,
   2014 WL 2200393 (S.D.N.Y. May 27, 2014) ........................................................ 8

*Guevoura Fund Ltd. v. Sillerman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................................................ 7

*Hall v. Prosource Techs., LLC*,
   2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ................................................... 7, 20, 21

*Hernandez v. Immortal Rise, Inc.*,
    306 F.R.D. 91 (E.D.N.Y. 2015) ........................................................ 12, 18

*Hernandez v. Norm Int'l LLC*,
    2021 WL 4260490 (E.D.N.Y. Sept. 20, 2021) .................................. 20

*Hill v. Cty. of Montgomery*,
    2021 WL 2227796 (N.D.N.Y. June 2, 2021) ............................ 6, 10, 15

*Karic v. Major Auto. Cos.*,
    2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016) ................................ 9, 13

*Kreisler v. Second Ave. Diner Corp.*,
    2013 WL 3965247 (S.D.N.Y. July 31, 2013) .................................... 20

*Kurtz v. Kimberly-Clark Corp.*,
    2024 WL 184375 (E.D.N.Y. Jan. 17, 2024) ...................................... 21

*McLaughlin v. IDT Energy*,
    2018 WL 3642627 ............................................................................ 21

*Meo v. Lane Bryant, Inc.*,
    2020 WL 4047897 (E.D.N.Y. July 17, 2020) ........................ 14, 18, 19

*Merino v. Beverage Plus Am. Corp.*, No. 10 Civ.,
    2012 WL 4468182 (S.D.N.Y. Sept. 25, 2012) .................................... 8

*Mikhlin v. Oasmia Pharm. AB*,
    2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ...................................... 7

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp.2d 611 (S.D.N.Y. 2012) ......................................... 3, 10

*Moses v. New York Times Co.*,
    79 F.4th 235 (2d Cir. 2023) ............................................................ 7

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ........................................................ 12

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020) .............................................. 9

*Nieto v. Izzo Constr. Corp.*,
    2018 WL 2227989 (E.D.N.Y. May 14, 2018) .................................. 13

*Norris v. Babylon Townhouse Diner Corp.*,
2019 WL 5540326 (E.D.N.Y. Oct. 25, 2019) ........................................................ 20

*Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*,
2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ....................................................... 16, 17

*Rasulev v. Good Care Agency, Inc.*,
2017 WL 11507653 (E.D.N.Y. Apr. 19, 2017) ................................................... 9, 15

*Ray v. 1650 Broadway Assocs. Inc.*,
2020 WL 5796203 (S.D.N.Y. Sept. 29, 2020) ........................................................ 18

*Reyes v. Buddha-Bar NYC*,
2010 WL 2545859 (S.D.N.Y. June 18, 2010) .......................................................... 8

*Rosenfeld v. Lenich*,
2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ........................................................... 7

*Sajvin v. Singh Farm Corp.*,
2018 WL 4214335 (E.D.N.Y. Aug. 13, 2018) ........................................................ 20

*Sewell v. Bovis Lend Lease, Inc.*,
2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ......................................................... 11

*Tanski v. AvalonBay Communities, Inc.*,
2020 WL 2733989 (E.D.N.Y. May 26, 2020) ........................................................ 19

*Toribio v. Abreu*,
2018 WL 6363925 (E.D.N.Y. Nov. 15, 2018) ........................................................ 21

*Tzilin v. Jimmy G Constr. Corp.*,
2024 WL 4309775 (E.D.N.Y. Sept. 26, 2024) ....................................................... 11

*Villa v. Highbury Concrete Inc.*,
2022 WL 19073649 (E.D.N.Y. Nov. 25, 2022) .................................................. 11, 15

*Willix v. Healthfirst, Inc*,
2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .......................................................... 17

*Zhu v. Wanrong Trading Corp.*,
2024 WL 4351357 (E.D.N.Y. Sept. 30, 2024) .................................................. 17, 18

**RULES**

Fed. R. Civ. P. 23(e) ................................................................................................. 5

Fed. R. Civ. P. 23(e)(2) ............................................................................................. 6

**OTHER AUTHORITIES**

Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 13.1. (5th ed. 2020) ............... 5

## GLOSSARY

Agreement: "Agreement" means the Settlement Agreement, including all exhibits.

Class List: "Class List" means a manipulatable electronic list containing the following information for each Class Member:  name, Social Security Number, last known addresses, last known phone numbers, dates of employment as an Artist, Cook (NY Class Members only), or Cook/Assist (NY Class Members Only), and each individual's total gross earnings as a Class Member during the Relevant Period.

Class Members: "Class" and "Class Members" are the "Collective Members" and the "NY Class Members."  These terms are further defined as follows, along with "Artist":

- The "Collective Members" include all individuals employed by Defendant at any time from January 1, 2022, through January 31, 2024 ("Relevant Period"), as an Artist, in any state other than New York (also the "Collective").

- The "NY Class Members" include all individuals employed by Defendant at any time from January 1, 2022, through January 31, 2024, ("Relevant Period"), as an Artist, Cook, or Cook/Assist, in New York State, inclusive of Plaintiffs and the Service Payment Recipients (also the "NY Class").

- The Term "Artist" includes any hourly, studio employee who worked as Artist for Defendant, including any Lead Artist, Assistant Artist, Senior Artist, or other "Artist" position.

Defendant: "Defendant" means EAD Entertainment, LLC d/b/a Muse Paintbar.

Fairness Hearing: "Fairness Hearing" means the hearing before the Court relating to the Final Approval Motion.

FLSA:  The "FLSA" means the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

Net Settlement Amount: "Net Settlement Amount" means the remainder of the Gross Settlement Amount after deductions for Court-approved attorneys' fees, costs, and expenses, Court approved Service Awards, the Settlement Administrator's fees, and all other Court-approved fees, costs, and expenses.

Notice: "Notice" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit.

NYLL:  The "NYLL" means Article 6, §§ 190 *et seq.*

Parties:  The "Parties" collectively means Plaintiffs and Defendant.

<u>Plaintiffs</u>: "Plaintiffs" mean the above-captioned plaintiffs, Alexis Lucente and Alvin Sumigcay. The singular "Plaintiff" refers to the putative class representative, Alexis Lucente.

<u>Plaintiffs' Counsel</u>: Plaintiffs' Counsel refers to Kessler Matura P.C. ("KM") and Stevenson Marino LLP ("SM").

<u>Qualified Class Member</u>: "Qualified Class Member" is a Class Member who does not opt out pursuant to this Agreement.

<u>Section 191</u>: "Section 191" refers to timely-wage-payment requirements of NYLL § 191.

<u>Section 195</u>: "Section 195" refers to the wage-statement-requirement provision of NYLL § 195.

<u>Service Payment</u>: "Service Payment" shall mean the amount of money Plaintiff seeks to compensate her and the Service Payment Recipients for the risks they incurred and services to the Class.

<u>Service Payment Recipients</u>: "Service Payment Recipients" means Plaintiffs, Alyssa Molina, Simone Kurtz, Mervis Lampley, Darren Mosley, Jaime Morrow, Katherine Mathews, and Julie Alfonso.

<u>Settlement Administrator</u>: "Settlement Administrator" shall refer to the third-party administrator, Xpand Legal Consulting LLC.

## INTRODUCTION

Plaintiff Alexis Lucente submits this memorandum of law in support of her motion for final approval of the class and collective settlement she reached with Defendant EAD Entertainment LLC, on behalf of herself, the NY Class, and the Collective.  Because the proposed settlement satisfies all of the criteria for final approval, Plaintiff respectfully requests that the Court: (1) grant final approval of the Agreement, attached as Exhibit A to the Declaration of Garrett Kaske[1]; (2) confirm the certification of the settlement class, for settlement purposes only, under Federal Rule of Civil Procedure 23(b)(3) and the collective under 29 U.S.C. § 216(b); (3) approve the service awards for Service Payment Recipients; (4) approve Plaintiffs' Counsel's fees and costs; (5) approve the Settlement Administrator's fees; and (6) dismiss this action with prejudice.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties and Claims

Defendant operates a chain of event/art class spaces, referred to as "studios," known as Muse Paintbar, where customers paint in a social group, and have the option to enjoy certain bar and food services.  ECF No. 20 (Amd. Compl.) ¶¶ 1, 64, 65.  Defendant employed Plaintiffs and Class Members, as Artists and cooks.  *Id.* ¶¶ 4-5, 12, 21, 25.  Artists, referred to as "Servers" in the Complaint, made model paintings and provided painting instruction during live classes.  *Id.* ¶ 4-6, 67.  Plaintiffs also claim that Artists served customers, cleaned up the store, and facilitated customers' events, whereas cooks, prepared food and clean up.  *Id*.

Plaintiffs alleged that the managers kept some of the Artists' tips.  *Id*. ¶¶ 7-8.  Plaintiffs also contended that NY Class Members over more than 25% of their time on physical tasks but

---

[1]    All capitalized terms are defined in the Glossary and Settlement Agreement.

were paid every other week.  *Id.* ¶¶ 76-79.  The Complaint further alleged that Defendant failed to list all tips and its phone number on the NY Class Members' paystubs.  *Id.* ¶¶ 75, 124, 134.

As a result, the Complaint set forth four causes of action, alleging that Defendant: (1) misappropriated Artists' tips under the FLSA; (2) misappropriated Artists' tips under the NYLL; (3) failed to pay Class Members' wages on time under Section 191 of the NYLL; and (4) failed to provide accurate wage statements in violation of Section 195 of the NYLL.  *Id.* ¶¶ 137-163. Plaintiff brought the First Cause of Action on behalf of the FLSA Collective, and the Second, Third, and Fourth Causes of Action on behalf of the NY Class.  *Id.* ¶¶ 10-14.

### B.    Overview of Litigation

Plaintiffs filed the Complaint on May 11, 2023.  *See* Kaske Decl. ¶ 14; ECF No. 1 (Compl.). Shortly thereafter, on June 7, SM sent Defendant a letter on behalf of six other individuals asserting claims identical to the Section 191 claims alleged in Plaintiffs' Complaint.  *See* Kaske Decl. ¶ 15. In lieu of motion practice and discovery, the Parties agreed to hold settlement negotiations.

### C.    Settlement Negotiations

After serving the Complaint on Defendant, the Parties exchanged letters, held numerous phone conferences, agreed to mediate, and exchanged relevant documents and data.  *Id.* ¶ 16.  In advance of the mediation, Defendant produced Plaintiffs' payroll records and time-entry details, time reports for a sampling of Class Members, a sampling of payroll summaries, and class-wide totals.  *Id.* ¶ 17.  For their part, Plaintiffs and the Service Payment Recipients produced 200 pages of paystubs, emails, and handbook materials in support of the Class.  *Id.* ¶ 18.  With this paper production and Excel data, Plaintiffs' Counsel calculated damages on a class-wide basis.  *Id.* ¶ 19.

Prior to the mediation, Plaintiffs shared their detailed brief and damages model with Defendant's counsel.  *Id.* ¶ 20.  On December 1, 2023, the Parties held their first mediation session

with Ruth Raisfeld, a well-respected mediator with extensive experience in class action and wage-and-hour litigation. *Id*. ¶ 21; *see, e.g.*, *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp.2d 611, 618 (S.D.N.Y. 2012). Although the Parties did not reach an agreement at the first session, they made significant progress and scheduled a second session. Kaske Decl. ¶ 22. At a second mediation session on February 13, 2024, the Parties reached an agreement on the material terms of a settlement. *Id*. ¶ 23. Over the next several weeks, the Parties negotiated and executed a detailed term sheet and final settlement agreement. *Id.* ¶ 24; Ex. A (Agr.).

Then, on May 23, Plaintiffs submitted the Agreement to the Court for preliminary approval. *See* ECF No. 27 (Prelim. Appr. Mot.). The Court preliminarily approved the settlement on May 29. ECF No. 28 (Prelim. Appr. Ord.).

## II.    SUMMARY OF THE SETTLEMENT TERMS

### A.  The Settlement Fund

Defendant has agreed to pay $380,000.00 to fully resolve the claims brought by Plaintiff on behalf of the Class, inclusive of attorneys' fees, costs of Plaintiffs' Counsel, Service Payments, and the Settlement Administrator's costs. Ex. A (Agr.) §§ 1.29, 3.1(A).

### B.  Class Members

Class Members include Plaintiffs, the Service Payment Recipients, the approximate 92 New-York-based Artists and cooks (the NY Class), and the approximate 395 non-New-York-based Artists in the FLSA Collective. Kaske Decl. ¶¶ 35-37; Ex. F (Paul Decl.) ¶ 5.

### C.  Releases

All NY Class Members who did not exclude themselves from the settlement will release all wage-and-hour and related recordkeeping claims that were, or could have been, asserted in the Complaint. Ex. A (Agr.) § 5.1, 5.2; *see also* Ex. A-1 (Class Notice) ¶ 10. Class Members who

cash their Settlement Checks will release all FLSA claims that were, or could have been, alleged in the Complaint. *Id.*; *see also* Ex. A-2 (Class Notice) ¶ 3.

### D.    Allocation Formula

Class Members are entitled to receive a proportionate share of the Net Settlement Fund based on their gross earnings during the Relevant Period. *See id.* § 3.4(B)(1); Kaske Decl. ¶ 34; Ex. F (Paul Decl.) ¶ 13.

### E.    Attorneys' Fees and Costs

Plaintiffs' Counsel seeks Court approval of one-third ($126,666.66) of the Gross Settlement Fund for their attorneys' fees, plus $5,753.71 in actual expenses and costs. *Id.* § 3.2(A).

### F.    Service Payment

Plaintiff seeks Service Payments on behalf of all Service Payment Recipients of $40,000.00, in total, in recognition of the services the Service Payment Recipients rendered to the Class Members and in exchange for a broader release. Ex. A (Agr.) §§ 3.3(A), 5.3. Each Service Payment Recipient has either executed the Agreement or a Service Payment Claim Form, which contains enhanced releases of claims. *See* Kaske Decl. ¶ 45; Ex. A-3 (Serv. Claim Form).

## III.    Distribution of Notice

Xpand Legal ("Xpand") is serving as the Settlement Administrator. *See* Ex. A (Agr.) § 1.27; ECF No. 28 (Prelim. Appr. Ord.) at 2; Ex. F (Paul Decl.). After receiving the Court's order preliminarily approving the settlement, Xpand confirmed and updated the addresses of all 495 Class Members (99 NY Class Members and 396 FLSA Collective Members). Ex. F (Paul Decl.) ¶¶ 5-6. Xpand mailed out the Notices to the 99 NY Class Members on July 3, 2024. *Id.* ¶ 6. Only two of the 99 Notices were returned as undeliverable, so Xpand ran skip traces to find new addresses. *Id.* In all, they located one updated address and remailed a packet. *Id.* Only one Notice was totally undeliverable, as no updated addresses were found. *Id.*

No one objected to or opted out of the settlement. *See id.* ¶¶ 8-9. The deadline to object or request exclusion was September 3, with a 30-day extension to October 3, for a second mailing to the undelivered Notice.[2]

## ARGUMENT

## I.    This Motion Seeks the Final Approval of the Settlement.

Rule 23's class action settlement procedure includes three distinct steps: (1) preliminary approval of the proposed settlement, on written motion; (2) dissemination of notice of settlement to all affected class members; and (3) final approval of the settlement, following a written motion and fairness hearing. *See* Fed. R. Civ. P. 23(e); Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 13.1. (5th ed. 2020). Plaintiff now requests that the Court take the last step in the process, so the Parties can effectuate the Agreement in accordance with the following schedule:

| **Event or Deadline** | **Due by Date or Date Certain** |
|---|---|
| Defendants] to deposit the Settlement Payment and Settlement Administration Costs into the Escrow Account. | 45 days after Order Granting Final Approval is entered. *See* Ex. A (Agr.) § 3.1(C). |
| Deadline for Settlement Administrator to distribute the Settlement Checks. | 30 days after Defendant's deposit the Settlement Payment into the Escrow Account. *See id.* § 3.1(D). |
| Deadline for Class Members to cash their Settlement Checks (i.e., the end of the check cashing period). | 120 days after their check date or 30 days from the reissuance of a check. *See id.* § 3.4(G). |
| Redistribution of uncashed amounts to Class Members, except if the total redistribution amount is less than $1,500, then donation to *cy pres* designee. | After close of check cashing period. |

---

[2]    Because Xpand sent Notices on July 3, the end of the 60-day Notice period fell on September 1. However, since September 1 was a Sunday and September 2 was Labor Day, the deadline fell on September 3.

## II.    Final Approval of the Settlement is Warranted.

Final approval requires the Court to determine that proposed settlement is "fair, reasonable, and adequate." *Flores v. CGI Inc.*, No. 22 Civ. 350, 2022 WL 13804077, at *2 (S.D.N.Y. Oct. 21, 2022).  In making this determination, courts consider the factors set forth in Rule 23(e)(2) along with the nine factors historically applied by Second Circuit courts.  *Id*. at *6; *Hill v. Cty. of Montgomery*, No. 9:14 Civ. 933, 2021 WL 2227796, at *3 (N.D.N.Y. June 2, 2021) (collecting cases).  Rule 23(e)(2) provides the following factors to a settlements fairness:  (A) the class representatives and class counsel have adequately represented the class; (B) the presence of arm's-length negotiations; (C) the adequacy of the relief, considering: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the method used to distribute relief to the class, including the means of processing claims; (iii) the terms of an attorney's fee award, including timing of payment; and (iv) any agreement to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).  The nine "*Grinnell* factors" are: (1) the case's complexity, expense and likely duration; (2) the class's reaction to the settlement; (3) the stage of the proceedings and discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of sustaining a class action; (7) defendants' ability to withstand a greater judgment; (8) the settlement fund in light of the best possible recovery; and (9) the settlement fund in light of all litigation risks.  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

For the reasons set forth below, this settlement meets all the requisite factors.

### A.  The Settlement Is Procedurally Fair (Rule 23(e)(2)(A)-(B)).

Rules 23(e)(2)(A)-(B) control the procedural fairness inquiry.  *Baudin v. Resource Mktg. Corp., LLC*, 1:19 Civ. 386, 2020 WL 4732083, at *6 (N.D.N.Y. Aug. 13, 2020), *on*

*reconsideration in part*, 2020 WL 6131758 (N.D.N.Y. Oct. 19, 2020). The "arms-length quality of the negotiations" is a positive factor in this inquiry. *Moses v. New York Times Co*., 79 F.4th 235, 243 (2d Cir. 2023). The use of an experienced mediator is "strong evidence of the absence of any collusion and further supports the presumption of fairness." *Guevoura Fund Ltd. v. Sillerman*, No. 1:15 Civ. 7192, 2019 WL 6889901, *6 (S.D.N.Y. Dec. 18, 2019) (cleaned up).

Here, the settlement was reached between experienced counsel negotiating at arm's length, after a thorough investigation, informal discovery, and a two-part mediation. Kaske Decl. ¶¶ 12-23; *see Baudin*, 2020 WL 4732083, at *6 (settlement procedurally fair where it followed informal discovery and mediation); *Hall v. Prosource Techs., LLC*, No. 14 Civ. 2502, 2016 WL 1555128, *5 (E.D.N.Y. Apr. 11, 2016) (Locke, Mag.) (approval of matter mediated by Ruth Raisfield). Moreover, Plaintiff's interests are not at odds with those of the Class. *Id*. ¶ 44.

## B. The Settlement Allocation and Distribution Plan Satisfy the Rule 23 Factors.

### 1. Distribution of the Notice and Settlement Checks by Mail Was Reasonably Calculated to Reach the Class Members (Rule 23(e)(2)(C)(ii)) and the Notice Was Well Crafted and Informative (Rule 23(c)(2)(B)).

The settlement distribution plan need not be perfect, it need only be reasonable and rational. *Mikhlin v. Oasmia Pharm. AB,* No. 19 Civ. 4349, 2021 WL 1259559, at *6 (E.D.N.Y. Jan. 6, 2021). A reasonable plan will deter unjustified claims while not subjecting class members to an overly burdensome process to claim their settlement payments. *Id*.

Here, the Agreement provided that Qualified Class Members receive a payment proportionate to the value of their potential claim. See Ex. A (Agr.) § 3.4(B)(1). Class Members will have at least 120 days to cash their Settlement Check, which they will receive without having to engage in a claims process. *See id.* § 3.4(G); *c.f. Rosenfeld v. Lenich,* No. 18 Civ. 6720, 2021 WL 508339, at *6 (E.D.N.Y. Feb. 11, 2021) (factor met where the parties merely had "a list of phone numbers" and agreed to "work to identify the individual[s] associated with" those numbers).

Moreover, the Notice complied with due process and Rule 23(c)(2)(B) requirements. The Notice was written in plain English and formatted to be as clear as possible. It was based on the model notice forms provided by the Federal Judicial Center ("FJC") on its website (www.fjc.gov), which courts use as a benchmark. *See, e.g.*, *Chime v. Peak Sec. Plus, Inc*., 137 F. Supp. 3d 183, 212 (E.D.N.Y. 2015) (relying on FJC models to review and approve notice). Additionally, the Notice described the litigation and terms of the settlement, informs the Class Members about how to participate, object, or opt-out of the settlement, provided details on the allocation of attorneys' fees and costs, and stated the time and place of the final approval hearing. *See* Ex. A-1 (Notice).

Lastly, the monies from any uncashed checks will be redistributed to Class Members, pro rata, or, if under $1,500, donated to a *cy pres* designee, Brandworkers International, Inc. *See* Ex. A (Agr.) § 3.4(I). Brandworkers is a non-profit workers center committed to organizing and advocating for the food-industry workers of New York City. *See, e.g.*, *Guallpa v. N.Y. Pro Signs Inc.*, No. 11 Civ. 3133, 2014 WL 2200393, at *10 (S.D.N.Y. May 27, 2014), *adopted*, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014); *Merino v. Beverage Plus Am. Corp*., No. 10 Civ. 706, 2012 WL 4468182 (S.D.N.Y. Sept. 25, 2012). Brandworkers' purpose, therefore, sufficiently aligns with the claims in the Complaint, which alleged that certain working conditions related to wages and recordkeeping were not met for workers in the food-service industry. *See also Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2010 WL 2545859, at *1 (S.D.N.Y. June 18, 2010) ("Under the cy pres doctrine, the best application of unused settlement funds is to donate them to an organization whose purpose is closely related to the purpose of the lawsuit.").

### 2. The Attorneys' Fees Sought Are Reasonable and There Are no Agreements Between the Parties Other than the Agreement (Rule 23(e)(2)(C)(iii)-(iv)).

The Agreement provides for Class Counsel to apply for up to one third of Gross Settlement for fees. Ex A. (Agr.) § 3.2(A). The payment of fees is keyed to the distribution of the fund. *Id*.

§ 3.1(C)**;** *c.f. Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20 Civ. 456, 2021 WL 7906584, at *8 (E.D.N.Y. May 25, 2021) (discussing that some courts disfavor "quick-pay provisions" that permit counsel to be paid before the class). Fees amounting to one-third of the fund are common in class cases. *Burns v. FalconStor Software, Inc.*, No. 10 Civ. 4572, 2014 WL 12917621, at *8 (E.D.N.Y. Apr. 11, 2014) (collecting cases), *adopted* (E.D.N.Y. May 8, 2014). Additionally, there are no other agreements between the Parties aside from the Agreement. For these reasons, and the reasons set forth in Section V below, the C.iii and C.iv factors are met.

### 3. The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)).

The Agreement provides for a pro rata allocation based on the value of their claims. *See* Ex. A (Agr.) § 3.4(B); Kaske Decl. ¶¶ 30, 34. Such pro rata allocations are "uniformly approve[d] as equitable." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020); *see, e.g.*, *Cymbalista*, 2021 WL 7906584, at *9 ("Pro rata distribution schemes are sufficiently equitable and satisfy the requirements of Rule 23(e)(2)(D)").

### C. The Settlement Is Substantively Fair.

### 1. Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1 & Rule 23(e)(2)(C)(i)).

This settlement avoids costly delay, while ensuring class-wide relief. Class actions involving FLSA claims, "are inherently complex." *Rasulev v. Good Care Agency, Inc.*, No. 16 Civ. 1993, 2017 WL 11507653, at *10 (E.D.N.Y. Apr. 19, 2017); *Karic v. Major Auto. Cos.*, No. 09 Civ. 5708, 2016 WL 1745037, at *5 (E.D.N.Y. Apr. 27, 2016). This case is no exception, with about 495 Class Members working in multiple states, and claims under federal and state law.

Extensive class-wide discovery would be required to establish liability and damages and to support Plaintiff's class certification motion. This discovery would include the full panoply of electronic and paper discovery related to Defendant's pay records and tip records; electronic

discovery into Defendant's communications about the pay policies at issue; and depositions of Class Members and Defendant's corporate representatives. *See* Kaske Decl. ¶ 29. After completing discovery, the Parties would likely move for summary judgment on the merits of the claims and a trial would most likely be necessary. *Id*. ¶ 26. Any judgment would likely be appealed, further extending the Litigation. *Id*. This settlement, on the other hand, provides significant relief to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### 2. The Reaction of the Class was Positive (*Grinnell* Factor 2).

A dearth of objectors and opt-outs weighs in favor of approval. *Hill*, 2021 WL 2227796, at *4 (collecting cases). Here, because no one objected or opted out of the settlement (Ex. F (Paul Decl.) ¶¶ 8-9), the settlement should be approved. *See Flores*, 2022 WL 13804077, at *7 ("The response to the settlement has been positive—no class members have objected to the settlement and only two exercised their right to opt-out. This is a major indication of fairness.").

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

This factor considers whether counsel adequately evaluated the merits before settling. *Cruz v. Sal-Mark Rest. Corp*., No. 1:17 Civ. 815, 2019 WL 355334, at *5 (N.D.N.Y. Jan. 28, 2019). Approval is warranted if the parties were able to weigh the strengths and weaknesses of their claims, including by way of informal discovery, interviews, and other discussions. *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (collecting cases).

The Parties meet this standard. In addition to extensively investigating the claims and Defendant, the Parties exchanged essential policy documents, time and payroll records, relevant communications, and candid position statements. Kaske Decl. ¶¶ 16-20. Plaintiffs' Counsel also interviewed prospective class members. *Id*. ¶¶ 12-13. Accordingly, this factor favors approval.

### 4. Continuing to Litigate is Risky (*Grinnell* Factors 4 and 5).

Though Plaintiff believes the case is strong, it is subject to litigation's "inherent" risks. *Sewell v. Bovis Lend Lease, Inc*., No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Bryant v. Potbelly Sandwich Works, LLC*, No. 17 Civ. 7638 2020 WL 563804, at *3 (S.D.N.Y. Feb. 4, 2020) (cleaned up). To assess the risk of proving liability and damages, the court weighs the likelihood of success with the settlement's value. *Id*.

Here, a trial on the merits would involve significant risk as to both liability and damages. While Plaintiff believes that she could ultimately defeat Defendant's defenses and establish liability, this would require significant factual development and favorable legal outcomes, which are all inherently uncertain. *See Villa v. Highbury Concrete Inc*., No. 17 Civ. 984, 2022 WL 19073649, at *4 (E.D.N.Y. Nov. 25, 2022) ("Given the fact-intensive nature of FLSA and NYLL claims, had this case progressed to trial, Plaintiffs would have experienced risk in proving liability and damages."). Plaintiff would have to rebut the merits of Defendant's anticipated defenses, including that Class Members: (1) were permitted to share tips with managers, because the managers did not exercise enough control over Defendant's employees to be considered excluded from the tip pool; (2) managers directly served the customers; (3) lack a cause of action for the failure to pay on time; (4) lack standing to bring the Section 195 claims; (5) did not suffer a cognizable harm or suffer a harm comparable to the liquidated damages sought in relation to their Section 191 claims; and (6) were provided paystubs. Kaske Decl. ¶ 28; *see also Tzilin v. Jimmy G Constr. Corp*., No. 23 Civ. 4047, 2024 WL 4309775, at *11, *13 (E.D.N.Y. Sept. 26, 2024) (discussing whether Section 191 claims are actionable and Section 195 claims like these may be brought in federal court). The proposed settlement alleviates these uncertainties and warrants preliminary approval.

**5. Establishing and Maintaining the Class Through Trial Presents Risk (*Grinnell* Factor 6).**

Obtaining class certification and maintaining it through trial is also risky. Defendant will continue to challenge class and collective action certification if this settlement is not approved. Defendant has unique defenses for various Class Members based on their circumstances, including the various job titles at issue, the differences between part-time and full-time employees, and the varying job expectations at different locations at different times of year. *Id*. ¶ 28. Thus, there is a legitimate risk that the Court would conclude that individualized factual inquiries preclude class treatment in this case. *See, e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification where class members' duties varied by location). Accordingly, this factor favors final approval.

**6. Defendant's Ability to Withstand a Greater Judgment Weighs in Favor of Approval (*Grinnell* Factor 7).**

A settlement is not unfair just because a defendant may be able to afford to pay more. *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015). Although Plaintiffs' Counsel believes Defendant could possibly afford a greater judgment, the decision to settle for the Settlement Amount was informed by Plaintiffs' Counsel's understanding of Defendant's business and the financial struggles of the previous owners of the Muse Paintbar brand. *See* Kaske Decl. ¶ 12. Accordingly, this factor either weighs in favor of approval or is, at worst, neutral.

**7. The Settlement Fund Is Substantial, Even Considering the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

The $380,000 settlement amount represents substantial value given the risks of litigation, even though the recovery could be greater if Plaintiff prevailed and maintained a class through trial and on appeal. There is no magic number to determine if a settlement amount is reasonable. *Chavarria v. New York Airport Serv., LLC*, 875 F. Supp. 2d 164, 174 (E.D.N.Y. 2012). "Instead,

there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (cleaned up).  The issue is then "whether the settlement falls below the lowest point in the range of reasonableness." *Ballinger v. Adv. Mag. Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *3 (S.D.N.Y. Dec. 29, 2014).  The agreement is reasonable if the settlement provides "a meaningful benefit to the [c]lass when considered against the obstacles to proving plaintiff's claims" and damages. *Karic*, 2016 WL 1745037, at *7.

Here, the settlement provides a substantial recovery.  By KM's estimation, the fund represents approximately 28% of the estimated of the Class Members' tip misappropriation claims, inclusive of liquidated damages, and 24% of the NY Class's claims under Sections 191 and 195. Kaske Decl. ¶ 30.  Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.  *Id*. ¶ 31.

### D.  The Settlement Meets the FLSA Approval Standard.

Because the Rule 23 standard is more demanding than the standard for approval of FLSA settlements, satisfying the above factors "necessarily" satisfies the FLSA approval standard.  *Cano v. Nineteen Twenty Four Inc.*, No. 15 Civ. 4082, 2017 WL 11507654, at *5 (E.D.N.Y. Apr. 24, 2017).  Regardless, courts may still deny approval of a settlement if the agreement contains terms that conflict with the FLSA's remedial purpose.  *See Nieto v. Izzo Constr. Corp.*, No. 15 Civ. 6958, 2018 WL 2227989, at *2 (E.D.N.Y. May 14, 2018) (collecting the "greatest hits" of impermissible terms).  As discussed below, the settlement meets the requirements for FLSA approval.

### 1.  The Settlement of the FLSA Collective Claim is Lower than Rule 23.

This standard for approval of a FLSA settlement differs from a class-action settlement under Rule 23.  *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 304

(E.D.N.Y. 2015).   FLSA settlements do not present the same due process concerns as does Rule 23 settlements.  *Id*.  Therefore, the burden for approving a FLSA settlement is lower.  *Id*.  As a result, the Court may grant approval to the settlement on the papers, rather than holding a final fairness hearing after noticing the putative settlement collective members.  *See* Ellen C. Kearns, *et al*., BNA, *The Fair Labor Standards Act*, § 18.VI.A.I. (4th ed. 2020) ("In settlements of FLSA collective action claims that present no resolution of state law wage and hour claims under Rule 23, most courts conclude that a fairness hearing is not required."); *see, e.g.*, *Lopez v. New York Cmty. Bancorp., Inc.*, No. 20 Civ. 2741 (E.D.N.Y. Oct. 7, 2021) (Text Order) (finding the one-step FLSA settlement "fair and reasonable"; *Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360, 2020 WL 4047897, at *1 (E.D.N.Y. July 17, 2020) (approving an one-step claims-made FLSA settlement on the papers); *Sanchez v. Bentzys Constr., Inc.*, No. 16 Civ. 7072 (E.D.N.Y. Sept. 19, 2017) (Text Order) (approving FLSA settlement entered into by named plaintiff in one-step).[3]  *See also Benoskie v. Kerry Foods, Inc.*, No. 19 Civ. 684, 2020 WL 5769488, at *2 (E.D. Wis. Sept. 28, 2020) (following the reasoning of now Seventh Circuit Judge Amy St. Eve in *Briggs v. PNC Financial Servs. Grp.*, No. 15 Civ. 10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) in determining that FLSA settlements, unlike Rule 23 settlements, may be approved in a single step).

### 2.   The Settlement Avoids the Greatest Hits of Impermissible Terms.

Plaintiffs' enhanced releases satisfy the FLSA standard for the reasons set forth in Section IV below and the Agreement contains no other provisions that could conflict with FLSA.  The releases provided by the Collective Members will be limited to the facts at issue.  *See* Ex. A (Agr.)

---

[3]       *See also* <u>Mem. of Law,</u> *Lopez v. New York Comm. Bancorp., Inc*., No. 20 Civ. 2741, ECF No. 54-1, at *4-5 (E.D.N.Y. Sept. 13, 2021) (explaining terms of settlement); <u>Letter to Tomlinson, Mag.,</u> *Meo*, ECF No. 55 at *2 (E.D.N.Y. May 11, 2020) (explaining terms of settlement reached on behalf of putative collective action members from across the nation); <u>Mem. of Law.,</u> *Sanchez v. Bentzys Construction, Inc.*, No. 16 Civ. 7072, ECF No. 32, at *2-3 (E.D.N.Y. Sept. 15, 2017).

§ 5.2; *see Villa*, 2022 WL 19073649, at *4 (E.D.N.Y. Nov. 25, 2022) ("[T]he releases are properly limited to wage-and-hour-related claims under the NYLL, FLSA, and related statutes.").  Further, the attorneys' fees provisions are consistent with Circuit norms (*supra* Arg. §§ II(B)(2)) and the Agreement does not have any confidentiality or non-disparagement agreements.

## III.    Certification of the Settlement Class and Collective is Appropriate.

### A.  The Class Should Continue to be Certified for Settlement Purposes.

Plaintiff previously sought and received conditional class certification under Rule 23.  This Court granted Plaintiff's motion to conditionally certify the class, appoint the firms as Class Counsel, and appoint Plaintiff as the Class Representative.  *See generally* ECF No. 29 (Prelim. Appr. Ord.).  To date, the facts of this case and the scope of the Class have not changed since the Court's Order.  Kaske Decl. ¶ 38.  That is, Plaintiff and the other 98 Class Members were subjected to a common wage-payment policy and the common questions needed to resolve their resulting claims predominate over any individualized issues.  *See* ECF No. 27-1 (Pls.' Br.) at 13-15.  Further, Plaintiff, KM, and SM have adequately represented the Class's interests and a class-wide settlement is superior to individualized adjudication.  *Id*. at 15-16.

Thus, the Court should grant final certification for the same reasons preliminary class certification was granted.  *See Hill*, 2021 WL 2227796, at *2 (final certification granted where "no facts [were] presented to indicate that the preliminary determination was incorrect or erroneous").

### B.  The Collective Should be Certified for Settlement Purposes.

Plaintiff also seeks final certification of the FLSA collective for settlement purposes. Because FLSA certification is a lighter burden than under Rule 23, the proposed collective necessarily meets the applicable standard.  *See Rasulev v. Good Care Agency, Inc.,* No. 16 Civ. 1993, 2017 WL 11507653, at *8 (E.D.N.Y. Apr. 19, 2017).

## IV.    Xpand Legal's Fee Should be Approved.

Xpand Legal has extensive experience administering class action settlements.  *See* Ex. F (Paul Decl.) ¶ 2.  To date, Xpand Legal has satisfactorily drawn on its experience to administer the Notice.  *See* Kaske Decl. ¶¶ 39-40.  Xpand's fee, which was capped at $15,000.00, as provided for in the Agreement, is reasonable and should be approved.  *Id.*; Ex. F (Paul Decl.) ¶ 13; s*ee also Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18 Civ. 885, 2021 WL 3008480, at *3 (E.D.N.Y. June 15, 2021) (administrator's fees to be paid out of the fund).

## V.    The Service Payments are Reasonable and Should be Approved.

Plaintiff requests $40,000.00 in aggregate Service Payments.  Ex. A (Agr.) § 3.3(A). Courts routinely award such payments in wage-and-hour class settlements.  *See, e.g.*, *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 Civ. 3203, 2018 WL 4861391, at *6 (E.D.N.Y. Sept. 28, 2018) (collecting awards ranging from $5,000 to $30,000 each).  Service awards are "important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff."  *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 Civ. 7854, 2021 WL 535635, at *4 (S.D.N.Y. Feb. 12, 2021) (cleaned up).  To review service awards, courts consider the (1) risks incurred, (2) effort expended, value added, and (3) total recovery.  *Frank*, 228 F.R.D. at 187.

First, Plaintiffs faced significant risk by publicly filing claims against their former employer.  *See* Kaske Decl. ¶ 42.  In situations like this, plaintiffs jeopardize "their ability to depend on the employer for references in connection with future employment."  *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010).

Second, the Service Payment Recipients worked diligently to achieve this class-wide recovery.  *See* Kaske Decl. ¶ 43; Ex. B (Maguire Decl.) ¶¶ 20-21.  They worked with counsel to investigate the claims, draft the complaint and negotiation letters, prepare for the Parties'

16

mediation sessions, obtained and produced pre-discovery documentary and witness evidence, and attended the mediation. *Id*. Further, Plaintiffs reviewed and executed the Agreement. *Id*. As such, their contributions to the Class justify their awards. *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245-46 (E.D.N.Y. 2010) (Bianco, J.) (approving enhancement awards of $25,000 to named plaintiff who participated in all phases litigation through settlement, and $5,000 to a second plaintiff who reviewed a complaint and discussed the facts with counsel); *see also Willix v. Healthfirst, Inc*, No. 07 Civ. 1143, 2011 WL 754862 at *7 (E.D.N.Y. Feb. 18, 2011) (granting service awards of $30,000, $15,000 and $7,500 to various plaintiffs).

As to the third factor, at 10.5% of the fund, the awards are within the range approved in this Circuit in wage-and-hour class actions. *See, e.g., Frank*, 228 F.R.D. at 187 (awards totaled 8.4% of the settlement); *Parker*, 2010 WL 532960, at *2 (approving awards totaling 11% of the fund, "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards"). Recently, in a similar matter, the Honorable Marcia M. Judge Henry, U.S.M.J., awarded $20,000 and $10,000 to two individuals, amounting to 10.7% of the total $280,000 settlement. *See Zhu v. Wanrong Trading Corp*., No. 18 Civ. 417, 2024 WL 4351357, at *13 (E.D.N.Y. Sept. 30, 2024).

Lastly, the Service Payments are consideration for enhanced releases. *See* Ex. A (Agr.) § 5.3. Although broad releases are generally not permitted in FLSA cases, they are permissible as consideration for a service award in a class or collective action settlement. *Bondi v. DeFalco*, No. 17 Civ. 5681, 2020 WL 2476006, at *6 (S.D.N.Y. May 13, 2020); *c.f. Barsa v. Beacon Health Options, Inc.*, No. 19 Civ. 1646, 2020 WL 7240346, at *8, n. 10 (S.D.N.Y. July 10, 2020) (denying approval of general release in exchange for a $1,000 service award, as compared to the $2,000 to $10,000 awards at issue in *Bondi*). Given the significant exchange between the Parties – the

17

enhanced release for Service Payments, the Service Payments warrant approval. *See, e.g.*, *Delijanin*, 2021 WL 535635, at *5 (noting the courts approve of service awards exchanged for "general releases beyond the wage and hour claims at issue"); *Ray v. 1650 Broadway Assocs. Inc.*, No. 16 Civ. 9858, 2020 WL 5796203, at *3 (S.D.N.Y. Sept. 29, 2020) ("Because the general release is consideration for . . . Service Awards . . . , I find that it is reasonable.").

## VI.   Plaintiffs' Counsel's Attorneys' Fees and Costs are Reasonable and Appropriate.

The Parties have agreed that Plaintiffs' Counsel's fees will not exceed one-third of the gross settlement amount. One-third of the gross settlement amount is reasonable considering the time KM and SM spent on this case and will spend administering the settlement. Kaske Decl. ¶¶ 47-50. KM and SM also seek to be reimbursed for expenses incurred litigating this case, which presently total $ $5,753.71. Kaske Decl. ¶ 47; Ex. G (Summary); Ex. I (Costs); *see also Cohan*, 2018 WL 4861391, at *6 (approving comparable expenses including postage, copies, court fees, service fees, copies, "travel expenses, discovery costs and legal research").

### A.   The Requested Attorneys' Fee of One Third is Consistent with Local Norms.

The "trend" in this Circuit is to award fees using the percentage of the fund method in common-fund wage settlements like this. *See Zhu*, 2024 WL 4351357, at *13; *Hernandez*, 306 F.R.D. 91 at 102 (citations omitted). Plaintiffs' Counsel's request for a contingency fee of one-third of the settlement is consistent with the norms in this district. *Meo*, 2020 WL 4047897 at *2 ("Such apportionment is well within the parameters set by courts in this District." (collecting cases)); *Cohan*, 2018 WL 4861391, at *2 ("In common fund cases, the Second Circuit favors awarding fees according to the 'percentage of the fund' method." (collecting cases)).

### B.   The Lodestar Cross-Check Demonstrates that the Fee is Reasonable.

The practice in the Second Circuit has been to crosscheck the fee with the lodestar. *See, e.g., Meo*, 2020 WL 4047897, at *2 (noting that courts need not inspect every hour when for the

crosscheck). That is, the lodestar is first determined by multiplying the hours reasonably expended on the case by reasonable hourly rates. *Cohan*, 2018 WL 4861391, at *5. The proposed fee is then compared to the lodestar. *Id*. Courts often approve fees that are "two to six times the lodestar." *Id.* (cleaned up; collecting cases); *accord. Tanski v. AvalonBay Communities, Inc.*, No. 15 Civ. 6260, 2020 WL 2733989, at *3 (E.D.N.Y. May 26, 2020) (collecting cases with 2.02- to 3.5-times multipliers and noting that multipliers over four are routine). "Indeed, a multiplier of [two] or lower would be at the lower end of the range of multipliers awarded by courts [for complex cases] within the Second Circuit." *In re Canon U.S.A. Data Breach Litig.*, No. 20 Civ. 6239, 2024 WL 3650611, at *8 (E.D.N.Y. Aug. 5, 2024) (cleaned up).

In analyzing the reasonableness of the fee request, including any multiplier, courts consider (1) time and labor expended; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Cohan*, 2018 WL 4861391, at *2; *see also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) ("Fee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." (cleaned up)).

Here, KM and SM request fees amounting to $126,666.66, which is about 1.26 times their lodestar amount of $100,667.50. Kaske Decl. ¶ 50; Ex. G (Summary). This lodestar estimate is reasonable because Plaintiffs' Counsel (a) calculated it using contemporaneous time records, (b) used billing judgment to account for overstaffing and duplicative work, and (c) used reasonable hourly rates regularly submitted to courts in this district and paid by their clients. *See* Kaske Decl. ¶¶ 48-52; Ex. B (Maguire Decl.). ¶¶ 16-19 ; *see, e.g.*, *Meo*, 2020 WL 4047897, at *3 (finding KM's lodestar estimate and requested fees to be reasonable, after it reviewed "the billing rates for the

respective attorneys" at KM and "carefully reviewed the biographical information on each of the attorneys, along with their professional affiliations, publications and prior cases."); *Hernandez v. Norm Int'l LLC*, No. 20 Civ. 4963, 2021 WL 4260490, at *3 (E.D.N.Y. Sept. 20, 2021) (same); *Norris v. Babylon Townhouse Diner Corp.*, No. 18 Civ. 3051, 2019 WL 5540326, at *1 (E.D.N.Y. Oct. 25, 2019) (finding KM's attorneys' rates are "within the range of reasonable rates" for this district).  Given the risks involved in litigating this matter (*see supra* Arg. §§ II(C)(4), (5), (7)), the complexity of this case (*see id.* § II(C)(1)), the quality of Plaintiffs' Counsel's representation (*see id.* §§ II(A), II(B)(3), II(B)(7)), and the public policy considerations, Plaintiffs respectfully request that the Court approve Plaintiffs' Counsel's requested attorneys' fees.

Although the hourly rates Plaintiffs' Counsel used are at the high-end of what Courts have stated are typically awarded in this district (*see, e.g.*, *Hall*, 2016 WL 1555128, at *12), "attorney's fees, like other goods and services, increase in cost with inflation." *Almond v. PJ Far Rockaway, Inc.*, No. 1:15 Civ. 6792, 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018).  Courts may reassess the hourly rates previously awarded to attorneys to account for inflation.  *See, e.g.*, *Kreisler v. Second Ave. Diner Corp.*, No. 10 Civ. 7592, 2013 WL 3965247, at *2 (S.D.N.Y. July 31, 2013) ("[B]ecause the cases cited were decided five to eight years ago, the Court finds that, in light of ordinary inflation, an hourly rate of $400 is reasonable."); *accord. Sajvin v. Singh Farm Corp.*, No. 17 Civ. 4032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) ("The passage of time warrants an increase of attorney's fees."), *adopted*, 2018 WL 4211300 (E.D.N.Y. Sept. 4, 2018).  Notably, the cases placing attorneys' rates within the ranges stated in *Hall*, for instance, date back over a decade.  *See Hall*, 2016 WL 1555128, at *12 (citing *Ferrara v. CMR Contracting LLC*, 848 F.Supp.2d 304, 313 (E.D.N.Y. 2012)).  "[C]ourts in more recent [complex] cases have awarded rates that have ranged from approximately $375 to $630 for partners, $200 to $400 for

associates, and $100 to $125 for paralegals." *Kurtz v. Kimberly-Clark Corp.*, No. 14 Civ. 1142, 2024 WL 184375, at *14 (E.D.N.Y. Jan. 17, 2024) (cleaned up; collecting cases). As a result, it is reasonable for Plaintiffs' Counsel's lodestar estimate to use rates in the higher end of the bracket's set forth in *Hall*, given the passage of time since *Hall* and each individual's level of experience. *See McLaughlin v. IDT Energy*, No. 14 Civ. 4107, 2018 WL 3642627, at *17, n. 23 (E.D.N.Y. July 30, 2018) (recommending rates above those pronounced in 2014, including $450 an hour for partners with ten-plus years of experience and $400 for associates with ten-plus years of experience); *see also Hall*, 2016 WL 1555128, at *13 (calculating the lodestar for paralegal $125, instead of the then-typical $100, because they were bilingual).

### C. The Requested Fee's Reasonableness is Further Highlighted by Alternative Methods of Calculating Plaintiffs' Counsel's Lodestar.

Even if the Court determined that Plaintiffs' Counsel over relied on partners and experienced associates in accumulating 237.8 in attorney hours between the firms, using a modest blended rate of $300 an hour shows that the fee is reasonable. *See, e.g.*, *Chodkowski v. Cnty. of Nassau*, No. 16 Civ. 5770, 2021 WL 3774187, at *6 (E.D.N.Y. Aug. 25, 2021) ("Using a blended hourly rate of $272.40 an hour to determine that one-third fee in FLSA settlement was reasonable."); *Toribio v. Abreu*, No. 18 Civ. 1827, 2018 WL 6363925, at *10 (E.D.N.Y. Nov. 15, 2018) (recommending a blended rate for two attorneys in FLSA default judgment award at $350 an hour), *adopted*, 2018 WL 6335779 (E.D.N.Y. Dec. 4, 2018). That is, 237.8 hours at $300 an hour results in a lodestar of $71,340 and a lodestar multiplier of just 1.78. *See, e.g.*, *Hall*, 2016 WL 1555128, at *17 (awarding a multiplier of 2.08).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant this motion and enter the Proposed Order (Ex. J).

Dated: October 28, 2024
        Melville, New York

Respectfully submitted,

By: _____
    Troy L. Kessler
    Garrett Kaske
    Benjamin A. Goldstein
    **KESSLER MATURA P.C.**
    534 Broadhollow Road, Suite 275
    Melville, NY 11747
    Telephone: (631) 499-9100
    tkessler@kesslermatura.com
    gkaske@kesslermatura.com
    bgoldstein@kesslermatura.com

    Justin R. Marino
    Jeffrey R. Maguire
    **STEVENSON MARINO L.L.P.**
    445 Hamilton Ave., Ste. 1500
    White Plains, NY 10601
    Phone: (212)-939-7227
    jmarino@stevensonmarino.com
    jmaguire@stevensonmarino.com

    *Attorneys for Plaintiff and the Proposed*
    *FLSA Collective and the New York Class*