UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
ALEXIS LUCENTE, on behalf of herself and all others : 
similarly situated, and ALVIN SUMIGCAY, individually, : Case No. 23 Civ. 3560 (SIL)
:
Plaintiffs, :
:
-against- :
:
EAD ENTERTAINMENT, LLC, :
:
Defendant. :
---------------------------------------------------------------------X

# DECLARATION OF GARRETT KASKE
# IN SUPPORT OF PLAINTIFF'S MOTION FOR
# FINAL APPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT

Garrett Kaske, hereby declares under penalty of perjury:

1. I am a partner of the law firm of Kessler Matura P.C. ("KM"), co-counsel, along with Stevenson Marino LLP ("SM" and with KM, "Plaintiffs' Counsel"), for Plaintiffs and the putative class and collective action in the above-captioned action.

2. I am familiar with the facts and circumstances of this action. I submit this declaration to place before the court relevant documents and information in support of Plaintiff's Motion for Final Approval of the Class Action Settlement.

## Kessler Matura P.C.'s Qualifications

3. Attached as **Exhibit C** is the CV of Troy L. Kessler, which includes an overview of KM's firm history.

4. Attached as **Exhibit D** is my CV and attached as **Exhibit E** is the CV of Benjamin A. Goldstein, a KM associate.

5. Kristine Jimenez is employed as bilingual (English and Spanish) paralegal by KM. Ms. Jimenez started with our firm in May 2018. In this role she regularly interviews potential

and existing clients, translates for our English-speaking attorneys, assists in drafting, and handles administrative matters at the firm. Previously, Ms. Jimenez has been employed by law firms as a paralegal since approximately March 2014. Immediately prior to joining our firm, she was employed by Donald Leo & Associates from approximately September 2017 through April 2018.

6. In *Garcia v. Pancho Villa's of Huntington Village*, the Honorable E. Thomas Boyle, U.S.M.J., certified the matter as a class action stating that KM's attorneys "are experienced labor and employment litigators, who have successfully represented employees in numerous collective and class action lawsuits." 281 F.R.D. 100, 107 (E.D.N.Y. 2011).

7. In *Rodriguez v. Joseph Eletto Transfer, Inc.*, the Honorable Jefferey S. Brown, J.S.C., approved a class action settlement finding that KM's attorneys and co-counsel have "significant experience prosecuting employment class actions and their work performed in representing the interests of the class members." 2016 NY Slip Op 32592(U), at *3 (Sup. Ct. Dec. 15, 2016).

8. In *Morris v. Affinity Health Plan*, the Honorable Andrew L. Carter, Jr., U.S.D.J., certified a class action and approved a class action settlement stating that KM's attorneys and co-counsel has "substantial experience prosecuting and settling wage and hour actions, are well-versed in wage and hour and class action law, have been class or lead counsel in numerous wage and hour class and collective actions." 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012). Moreover, Judge Carter determined that our attorneys are "experienced employment lawyers with good reputations among the employment law bar . . . [and] substantial experience prosecuting large-scale wage and hour class and collective actions." *Id*. at 622.

9. In *Dawson v. Sterling Bancorp., Inc.*, the Honorable Linda Kevins, J.S.C., preliminary approved a class action settlement involving unpaid overtime claims for assistant

branch managers of a bank. 2020 WL 6686606 (Sup. Ct. Oct. 29, 2020). Judge Kevins determined that KM "has substantial experience and is well versed on the subject matter of the lawsuit." *Id*. at *2.

10. In *Ellison v. Adam Rest Corp.*, the Honorable Conrad D. Singer, J.S.C., certified a class of restaurant workers seeking unpaid minimum wages. 2024 WL 2273524 (Sup. Ct. Apr. 2, 2024). Judge Singer held that KM "holds sufficient qualifications" to serve as class counsel. *Id.* at *3.

11. As outlined in these decisions and others, courts have repeatedly found that my firm and I have served as adequate counsel in collective and class actions. *See, e.g.*, *Manfredo v. VIP Auto Group of Long Island, Inc.*, No. 20 Civ. 3728, ECF No. 43 (E.D.N.Y. June 27, 2022); *Robinson v. Big City Yonkers*, Inc., No. 600159/16, 2017 N.Y. Slip Op. 30177(U), at *13 (Sup. Ct Jan. 17, 2017); *Rodriguez*, 2016 NY Slip Op 32592(U), at *3; *Bijoux v. Amerigroup New York, LLC*, No. 14 Civ. 3891, 2016 WL 2839797, at *1 (E.D.N.Y. May 12, 2016); *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015); *Garcia v. Pancho Villa's of Huntington Village, Inc.*, No. 09 Civ. 486, 2012 WL 5305694, at *7 (E.D.N.Y. Oct. 4, 2012); *Morris*, 859 F. Supp. 2d at 616, 622; *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 WL 3778173, at *8 (S.D.N.Y. July 31, 2014).

## The Instant Action

*Investigation & Litigation Timeline*

12. Before filing the litigation, KM engaged in a robust investigation of the claims, Defendant's businesses and ownership, the previous owners of Muse Paintbar, the receivership process that led to Defendant emerging as the owner and operator of Muse Paintbar, Defendant's anticipated defenses, the propriety of maintaining class certification through trial, and the risks

3

associated with this litigation. KM conducted in-depth interviews of the named Plaintiffs and other putative class members, reviewed the employment records of the named Plaintiffs and others performed internet research, and reviewed court filings related to Defendant and Muse Paintbar's previous owners.

13. SM performed a similar investigation, and interviewed Simone Kurtz, Mervis Lample, Darren Mosley, Jaime Morrow, Katherine Mathews, and Julie Alfonso.

14. Plaintiffs filed the Complaint on May 11, 2023.

15. SM sent Defendant a pre-suit demand letter related to the Class's Section 191 claims on June 7, 2023.

16. After Plaintiffs served the Complaint, the Parties exchanged letters, held numerous phone conferences, agreed to mediate, and exchanged relevant documents and data.

17. In advance of mediation, Defendants produced Plaintiffs' payroll records and time-entry details, time reports for a sampling of Class Members, payroll summaries for a sampling of Class Members and class-wide totals.

18. For their part, Plaintiffs and the Service Payment Recipients produced 200 pages of paystubs, emails, and handbook materials in support of the claims.

19. With this paper production and Excel data, Plaintiffs' Counsel calculated damages. Counsel calculated the potential damages, described in paragraph 30 below, for the 99 New-York-based Artists and cooks in the NY Class, and the 396 non-New-York-based Artists in the FLSA Collective.

20. Prior to the mediation, Plaintiffs shared their detailed brief and damages model with Defendants' Counsel.

21. On December 1, 2023, the Parties held their first mediation session with Ruth Raisfeld, a well-respected mediator with experience in class action and wage-and-hour litigation.

22. Although the Parties did not reach an agreement at the first session, they made significant progress and scheduled a second session.

23. At a second mediation session on February 13, 2024, the Parties reached an agreement on the material terms of a settlement.

24. Over the next several weeks, the Parties negotiated and executed a detailed term sheet and final Agreement.

25. The Parties fully executed the Agreement on May 23, 2024, attached as **Exhibit A**.

## The Settlement

*Fairness of the Settlement*

26. The Gross Settlement Fund is a compromise figure. In reaching the Settlement, Class Counsel carefully evaluated the merits of the case and proposed settlement, the risks of establishing liability – whether through summary judgement or trial – and maintaining class certification through Defendant's appeal and any subsequent trial, and the time, delay, and financial repercussions of trial or appeal. Although Class Counsel believes that Plaintiffs' claims are strong, we recognize the legal, factual, and procedural obstacles to recovery, as Defendant will continue to contest Plaintiffs' claims if the action does not settle. Moreover, even if this case were to proceed to trial, Class Counsel recognizes that the apparent strengths of Plaintiffs' claims are no guarantee against a complete or partial defense verdict. Even if a judgment were obtained against Defendant at trial, the relief might be no greater, and indeed might be less, than that provided by the proposed settlement.

27. As discussed in detail above, the settlement negotiations were always hard fought at arm's-length, and they have produced a result that Class Counsel believes to be in the Class's best interest, in light of the costs and risks of continued litigation.

28. Defendant denies Plaintiffs' allegations and contend that they paid all their employees consistent with the federal and state wage-and-hour laws. To fully succeed in this case, Plaintiffs will have to rebut Plaintiffs would have to rebut the merits of Defendant's anticipated defenses, including that Class Members: (1) were permitted to share tips with managers, because the managers did not exercise enough control over Defendant's employees to be considered excluded from the tip pool; (2) managers directly served the customers; (3) lack a cause of action for the failure to pay on time; (4) lack standing to bring the Section 195 claims; (5) did not suffer a cognizable harm or suffer a harm comparable to the liquidated damages sought in relation to their Section 191 claims; and (6) were provided paystubs. Defendant also has unique defenses for various Class Members based on their circumstances, including the various job titles at issue, the differences between part-time and full-time employees, and the varying job expectations at different locations at different times of year.

29. Although the investigation and informal discovery to date has been robust, extensive class-wide discovery would be required, absent settlement approval, including: the full panoply of electronic and paper discovery related to Defendant's pay records and tip records; electronic discovery into Defendant's communications about the pay policies at issue; and depositions of Class Members and Defendant's corporate representatives.

30. By Plaintiffs' Counsel's estimation, the Gross Settlement Fund ("GSF") represents approximately 28% of the damages associated with the tip-related claims and 24% of the damages associated with the timely-payment and wage-statement claims:

| Claim Type | GSF | Allocation of GSF (Points per $ Paid as per § 3.4(B)) | Portion of GSF Allocated to Claim | Est. Total Damages | Percentage of Recovery |
|---|---|---|---|---|---|
| Tips | $380,000 | 3.5 | $133,000 | $374,000 | 28% |
| Sections 191/195 | | 6.5 | $247,000 | $1,024,000 | 24% |

These damages estimates are based on Plaintiffs' Counsel's analysis of the class-wide data and sampling data provided to Plaintiffs' Counsel in advance of the mediation. For the tip claims, as per the company records, the value of the tips received by Defendant's managers through the end of January 2024 is approximately $187,000 ($137,500 outside of New York; $49,500 within New York). As a result, Plaintiffs allege the Artists would be entitled to these tips plus 100% as liquidated damages. For the Section 191 claims, Plaintiffs' Counsel halved the total payroll paid to the putative Class Members from January 2022 through November 2023, and then extrapolated for the time from November to January 2024. Assuming the Class Members could recover 100% of their allegedly late-paid wages as liquidated damages, the damages total $712,000. Finally, assuming the average Class Member could receive $4,000 on the wage-statement claim (78 Class Members x $4,000) = $312,00), the total exposure on these two NYLL claims come to approximately $1,024,000 ($312,000 + $712,000).

31. Considering the strengths and weaknesses of the case, Class Counsel believes the settlement easily falls within the range of reasonableness because it achieves a significant benefit for Plaintiffs and Class Members in the face of significant obstacles.

32. As a result, this settlement achieves all the objectives of the litigation, namely a substantial monetary settlement to approximately 495 Class Members who were subjected to Defendant's allegedly unlawful wage and hour policies.

*Other Agreements*

33. There are no other agreements between the Parties aside from the Agreement.

*Settlement Allocation*

34. The Agreement provides for a pro rata allocation based on the value of their claims. The allocation formula works on a point-system keyed to each Class Members' gross earnings. This method fairly approximates the value of the Class Members' claims because the employees who worked more, and earned more wages, were more likely to be subjected to wage violations asserted in the Complaint.

## The Class

35. The Class includes 99 New York Class Members and 396 FLSA Collective Members employed in Defendant's chain of event/art class spaces from January 1, 2022, through January 31, 2024. Defendant's customers paint in social groups at the spaces, referred to as "studios," while receiving bar and food services.

36. The NY Class includes: (1) "Artists" who facilitated customer events, served customers, prepared food, and cleaned up the spaces; and (2) cooks, who prepared food. Plaintiffs made allegations of tip misallocation and improper pay frequency, applicable to the NY Class.

37. The FLSA Collective includes "Artists" in any other state than New York. Plaintiffs alleged tip misallocation in relation to the FLSA Collective.

38. The facts of this case and the scope of the Class have not changed since the Court preliminarily approved the Settlement and conditionally certified the Class. Class Counsel has neither learned of any information during the Notice Period that that would change who would qualify as a Class Member nor altered Class Counsel's analysis of whether a class-wide adjudication of this matter is appropriate.

**Settlement Administrator**

39. KM solicited bids from trusted settlement administrators in advance of setting the maximum settlement administration amount of $15,000 in the Agreement. In proposing and selecting Xpand Legal, KM considered its own experience working with Xpand Legal and their principal, the reasonableness of their bid, and their reputation in the industry.

40. Xpand Legal distributed the Notice as provided for in the Agreement and set forth in Exhibit F.

**Contributions to the Class by Plaintiffs and Other Service Payment Recipients**

41. The Plaintiffs and Service Payment Recipients made important contributions to the prosecution and fair resolution of this action on behalf of the Class.

42. Plaintiffs and the Service Payment Recipients faced significant risk by publicly filing claims against their former employer. In other cases, KM's clients have reported difficulty getting hired after filing a lawsuit like this, whether because of employer blackballing or putative employers seeing the case docket at the top of a Google search. Further, a plaintiff in a class action case was disparaged by other employees and members of her community on Facebook after the defendant in that case posted about the case. Unfortunately, before the post was deleted, it received significant traction on Facebook: 276 individuals "Liked" the post, there were 117 comments made, and 56 individuals shared it.

43. The Service Payment Recipients worked diligently to achieve this class-wide recovery. They worked with counsel to investigate the claims, draft the complaint and negotiation letters, prepare for the Parties' mediation sessions, obtained and produced pre-discovery documentary and witness evidence, and attended the mediation. Further, Plaintiffs executed the Agreement.

44. Plaintiff Lucente, as the proposed class representative, and Plaintiff Sumigcay, as a named Plaintiff, through their active participation in this lawsuit and their actions before bringing this suit, have demonstrated that they sought to protect the interests of all Class Members. Class Counsel is not aware of any conflicts between Plaintiffs and the Class Members.

45. Service Payment Recipients are also providing Defendant with additional consideration – enhanced releases – in exchange for the proposed Service Payments. *See* Ex. A-3 (Serv. Claim Form). Each Service Payment Recipient has either singed the Agreement or executed and returned a Service Payment Claim Form.

### **Attorneys' Fees and Costs**

46. Plaintiffs' Counsel's significant experience prosecuting wage-and-hour matters on behalf of individuals and classes was directly responsible for bringing about the positive settlement and weighs in favor of approval of that portion of the Settlement that represents attorney's fees. *See supra* ¶¶ 3-11; Ex. B (Maguire Decl.) ¶¶ 2-15.

47. Pursuant to the Agreement, Plaintiffs' Counsel seeks approval of one-third of the Gross Settlement Fund for their attorneys' fees (i.e., $126,666.66), plus $5,753.71 for their expenses and costs. Ex. A (Agr.) § 3.2(A).

48. As of October 23, KM and SM have spent over 250 hours litigating and settling this case. These hours were complied from contemporaneous time records. *See* Ex. G (Summary); Ex. (KM Time); Ex. B-1 (SM Time). KM and SM will continue to invest significant time on this case, including continuing to seek final approval of this settlement and overseeing its administration.

49. KM used billing judgment in compiling our contemporaneous time records and calculating our total lodestar. For instance, KM excluded or reduced the time our attorneys spent

performing administrative tasks, such as e-filing, copying, scanning, or preparing hard-copy materials, which could have been performed by support staff at a lesser hourly rate, and further reduced my time and Mr. Kessler's (TK) time to account for duplicative work. KM also reduced the time spent by legal assistant Grismaldy Rosario (GR) to zero because their involvement, though important, in this matter was limited. In all, KM reduced the time used in calculating our lodestar by 8.1 hours (5.4% of KM's reported time). See Ex. G (Summary); Ex. (KM Time) ("AdjHours" column denotes reductions to hours reported in the "RawHours" column).

50. KM and SM's total lodestar, exclusive of costs, was $100,667.50. See Ex. G (Summary). As a result, the requested fee is about 1.26 times the lodestar.

51. Although much of KM's work is on a contingent or hybrid fee arrangement, KM has hourly clients. For these clients, KM's ordinary and regular billing rates are within the following ranges: $725 to $500 per hour for partners, $475 and $325 per hour for associates, and $150 to $100 per hour for paralegals and legal assistants. For example, before becoming a partner on October 1, 2024, I worked on an unpaid wages matter from July through December 2022 for which KM billed $400 an hour for his services.

52. With regards to contingency fee cases, for purposes of the crosscheck, New York courts have approved wage-and-hour settlements in which KM's attorneys submitted lodestar calculations using rates similar to those included here. For instance, in approving a FLSA settlement the Court held that KM's attorneys' "hourly rates . . . fall within the range of reasonable rates within the Eastern District of New York." *Nunes v. Rob-Glen Enters., Inc.*, No. 16 Civ. 6207, 2018 WL 3351798, at *2 (E.D.N.Y. July 5, 2018).[1] Other examples include:

---

[1] See Summary of Attorneys' Fees, *Nunes v. Rob-Glen Enters., Inc.*, No. 16 Civ. 6207, ECF No. 41-3 (E.D.N.Y. June 5, 2018) (calculating lodestar using the following rates for KM's

a. *Norfleet v. RevCore Recovery Ctr. Manhattan LLC*, No. 617754/2023, NYSCEF No. 18 (Sup. Ct. Jan 19, 2024) (approving KM's motion for approval of class action settlement);

b. *Bonefort v. Sticker Mule, LLC*, No. 1:20 Civ. 1222, ECF No. 33 (N.D.N.Y. Feb. 24, 2022) (approving class-action settlement in underpayment of overtime case);

c. *Lopez v. New York Community Bancorp, Inc.*, 2:20 Civ. 2741 (E.D.N.Y. Oct. 7, 2021) (ECF Order) (granting motion to approve collective action settlement and finding that "the terms of the amended settlement agreement and the attorneys' fees and costs are fair and reasonable");

d. *Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360, 2020 WL 4047897, at *3 (E.D.N.Y. July 17, 2020) (approving fees based on percentage-of-recovery and lodestar crosscheck, in which the court reviewed billing rates of KM and co-counsel).[2]

53. Pursuant to the one-third contingency retainer agreements with Plaintiffs, KM and SM have worked without compensation of any kind to date because the fee has been wholly contingent upon the result achieved.

---

attorneys: $450 for partner, Troy Kessler, $375 for partner, Marijana Matura, $250 for associate, Tana Forrester, who was three years out of law school at the time).

[2] *See* Attorneys' Fees & Costs Summary, *Norfleet v. RevCore Recovery Ctr. Manhattan LLC*, No. 617754/2023, NYSCEF No. 13 (Sup. Ct. Nov. 14, 2023) (calculating lodestar using $425 for Garrett Kaske (as an associate), $400 for associate Tana Forrester (graduated law school in 2015), and $150 for Kristine Jimenez.); Attorneys' Fees & Costs Summary, *Bonefort v. Sticker Mule, LLC*, No. 1:20 Civ. 1222, ECF No. 32 (N.D.N.Y. Jan. 24, 2022) (calculating lodestar using $375 for Garrett Kaske); Attorneys' Fees & Costs Summary, *Lopez v. New York Community Bancorp, Inc.*, 2:20 Civ. 2741, ECF No. 54-8 (E.D.N.Y. Sept. 13, 2021) (calculating lodestar using $375 for Garrett Kaske); Attorneys' Fees & Costs Summary, *Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360, ECF No. 55-4 (E.D.N.Y. May 11, 2020) (calculating lodestar using $350 for Garrett Kaske).

## Documents

54. Annexed as **Exhibit A** is a copy the Settlement Agreement.

    i. Annexed as **Exhibit A-1** is a copy of the Notice sent to Class Members ("Class Notice").

    ii. Annexed as **Exhibit A-2** is a copy of the Notice to be sent to Collective Members ("Coll. Notice").

    iii. Annexed as **Exhibit A-3** is a copy of the Service Payment Claim Form ("Serv. Claim Form").

55. Annexed as **Exhibit B** is the Declaration of Jeffrey R. Maguire, Esq. in Support of Plaintiff's Motion for Final Approval of the Class Action Settlement ("Maguire Decl.").

    i. Annexed as **Exhibit B-1** is a copy of the SM's Time Records ("SM Time").

56. Annexed as **Exhibit C** is Troy L. Kessler's curriculum vitae ("Kessler CV").

57. Annexed as **Exhibit D** is Garrett Kaske's curriculum vitae ("Kaske CV").

58. Annexed as **Exhibit E** is Benjamin Goldstein's curriculum vitae ("Goldstein CV").

59. Annexed as **Exhibit F** is the Declaration of Jonathan Paul of Xpand Legal ("Paul Decl.").

60. Annexed as **Exhibit G** is a summary of KM and SM's attorneys' fees and costs ("Summary").

61. Annexed as **Exhibit H** are KM's contemporaneous time records ("KM Time").

62. Annexed as **Exhibit I** is a list of KM's costs and expenses ("Costs").

63. Annexed as **Exhibit J** is a Proposed Order Granting Plaintiff's Motion for Final Approval of Class Action Settlement ("Proposed Order").

Dated: May 23, 2024
       Melville, New York

Respectfully submitted,

By: /s/ Garrett Kaske
    Garrett Kaske

Troy L. Kessler
Garrett Kaske
Benjamin A. Goldstein
**KESSLER MATURA P.C.**
534 Broadhollow Road, Suite 275
Melville, NY 11747
Telephone: (631) 499-9100
tkessler@kesslermatura.com
gkaske@kesslermatura.com
bgoldstein@kesslermatura.com

Justin R. Marino
Jeffrey R. Maguire
**STEVENSON MARINO L.L.P.**
445 Hamilton Ave., Ste. 1500
White Plains, NY 10601
Phone: (212)-939-7227
jmarino@stevensonmarino.com
jmaguire@stevensonmarino.com

*Attorneys for Plaintiff and the Proposed FLSA Collective and the New York Class*